**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CHRISTINA and JEFFREY TERRY, husband and wife, each individually and on behalf of their minor child, G. TERRY, and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. <u>CIV-18-415-C</u> ) |
| HEALTH CARE SERVICE CORPORATION, a mutual legal reserve company, d/b/a BLUE CROSS AND BLUE SHIELD OF OKLAHOMA, | ) **JURY TRIAL DEMANDED** ) ) **ATTORNEY'S LIEN CLAIMED** ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiffs Christina and Jeffrey Terry, on their own behalf and on behalf of their minor child, G. Terry, and on behalf of all others similarly situated, by and through their undersigned attorneys, the law firms of McIntyre Law, P.C., Edward L. White, PC, and Logan & Lowry, LLP, and for their Complaint and claims for relief against the Defendant, Health Care Service Corporation, a mutual legal reserve company, d/b/a Blue Cross and Blue Shield of Oklahoma ("BCBSOK"), allege and state as follows, to wit:

### I.     PARTIES, JURISDICTION, AND VENUE

1.     Christina and Jeffrey Terry and their minor child reside in Greer County, Oklahoma and were, at all relevant times, insured by BCBSOK per an individual preferred provider organization ("PPO") health insurance contract - Blue Preferred Gold PPO 007,

Id. No. 927705055, Group No. OG2009 ("Contract"). *See* **Exhibit 1**. Plaintiffs' benefits arising under the Contract are further set forth in BCBSOK's Schedule of Benefits for Comprehensive Health Care Services ("SOB") and its Outline of Coverage ("OOC"). *See* **Exhibit 2** and **Exhibit 3**, respectively.  The Oklahoma Insurance Department ("OID") approved the Contract per the System for Electronic Forms Filing ("SERFF") Tracking No. OKCP-128997524 and the SOB and OOC per SERFF Tracking No. OKCP-129296234.   The Contract, SOB, and OOC may be referred to herein as the "Policy Documents."

2.     BCBSOK is an Illinois Corporation authorized to conduct business in Oklahoma and maintaining offices both in Oklahoma City at 3817 Northwest Expressway, Suite 300, 73112 and in Tulsa at 7777 E. 42nd Place, 74145.

3.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the class contains members of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

4.     The Court has personal jurisdiction over Defendant because Defendant is located in this District.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), since the cause of action arose in this District and the unlawful conduct of Defendant, out of which the cause of action arose, took place in this District.

## II.     BACKGROUND

6.     Upon implementation of the Patient Protection and Affordable Care Act ("ACA"), individuals, including Plaintiffs, were required to enroll in an ACA compliant

health insurance plan or face penalties. Plaintiffs enrolled in a health care plan offered by BCBSOK as evidenced by the Contract.

7.      On January 13, 2014, G. Terry was born at Great Plains Regional Medical Center in Elk City, Oklahoma ("Great Plains")—premature and without his lungs fully developed. He was quickly transferred into the intensive care unit ("ICU") at Great Plains.

8.      G.'s condition continued to deteriorate until the morning of January 15, 2014, when his pediatrician, Dr. Paul Firth, determined it necessary for G. to receive care that only Children's Hospital at OU Medical Center in Oklahoma City, Oklahoma ("Children's") could provide.

9.      Due to the fact that G.'s lung function was deteriorating with each passing moment and the doctor's evaluation of the risk that he would not survive the length of a ground ambulance transfer, G.'s doctor ordered necessary, time-critical, emergency air transfer to a hospital with neonatal intensive care availability, to wit: Children's.

10.     In order to save G.'s life, Rocky Mountain Holdings, LLC ("RMH"), evacuated him by emergency air ambulance from Great Plains in Elk City to Children's, which was *the closest hospital that could provide the necessary care*.

11.     RMH billed Plaintiffs $49,999.00 for the flight from Elk City to Children's in Oklahoma City.

12.     On or about May 29, 2014, BCBSOK sent an Explanation of Benefits ("EOB") stating the amount Plaintiffs may owe for the emergency air ambulance services was zero dollars, leading Plaintiffs to believe they would owe zero dollars for the

emergency air ambulance services. *See* **Exhibit 4**.  However, like most of BCBSOK's documents, this one was ambiguous later noting that "your claim has been denied."

13.    On September 4, 2014, BCBSOK sent Plaintiffs another EOB stating that the total benefits approved by BCBSOK for the emergency air ambulance transfer amounted to $2,909.92 and informed Plaintiffs that they were responsible for the remaining $47,089.08 of the air ambulance bill because RMH was an out-of-network provider. *See* **Exhibit 5**.

14.    On or about September 22, 2014, Plaintiffs verbally appealed BCBSOK's benefit determination and contacted BCBSOK by telephone inquiring as to why BCBSOK paid such a small amount of the air ambulance bill. A BCBSOK representative informed Plaintiffs that BCBSOK would review the claim.

15.    On October 7, 2014, BCBSOK adjusted the claim and sent another EOB stating that the total benefits approved by BCBSOK for the emergency air ambulance transfer was $4,849.86, an amount only $1,939.94 greater than BCBSOK's original benefit determination. Simultaneously, BCBSOK informed Plaintiffs—parents of a premature child born with severely undeveloped lungs—that "[s]ince an out-of-network provider performed the services, you are responsible for additional charges."  *See* **Exhibit 6**.  No explanation was provided to Plaintiffs by BCBSOC in the EOB of why the amount was adjusted or how it decided how much to pay. But in a correspondence with the OID BCBSOK explained that a claim review resulted in a decision, for reasons not explained, to "pay at the network level…per the [unspecified] member benefits."

16.    Consequently, BCBSOK paid only a fraction of the bill, $4,849.86, which resulted in RMH alleging that Plaintiffs owed a remaining balance of $45,149.14 ("Alleged Balance").

17.    Plaintiffs, in an emergency situation with their newborn child's life on the line, were without the luxury of taking the time to identify any in-network air ambulances, if any such air ambulances existed. On information and belief, no in-network air ambulance was available in that location at that time.

18.    Furthermore, while ordering the emergency air ambulance transfer, the coordinator inquired about Plaintiffs' insurance, and was informed that they were insured by BCBSOK. There was no mention of the fact that the air ambulance provider was out-of-network or that the air ambulance services would not be covered by BCBSOK.

19.    In desperation, Plaintiffs sent a request for assistance to the Oklahoma Insurance Department ("OID") seeking assistance in having BCBSOK cover the air ambulance services:

> I don't believe I should have to pay fifty thousand dollars to the helicopter company when I have insurance that I am paying for that should cover the cost of life saving procedures such as this. The insurance company . . . should cover the helicopter ride cost. The point of having insurance is covering individuals in case of a catastrophic event happening such as this. If they aren't going to cover emergencies, then what is the point of having insurance?

20.    On or about December 31, 2014, BCBSOK responded to the OID's inquiry regarding Plaintiffs' Request for Assistance reiterating that $4,849.86 was the total amount BCBSOK would cover and that Plaintiffs were responsible for the remaining $45,149.14 because RMH was an out-of-network provider; BCBSOK alleged that insureds are

responsible for the difference between the billed amount and the amount paid by BCBSOK when the provider is out-of-network.

21.     Plaintiffs, as noted above or otherwise, timely and properly appealed BCBSOK's improper payment of their claim.

22.     On December 30, 2017 (almost four years after the subject emergency service was provided), BCBSOK sent a letter to Plaintiffs regarding Plaintiffs' appeal of BCBSOK's benefit determination, stating that BCBSOK reconsidered G.'s claim for services provided by RMH and that it determined the claim had been processed correctly. *See* **Exhibit 7**.[1]

23.     On April 4, 2018, BCBSOK again sent a letter to Plaintiff, Christina Terry, regarding Plaintiffs' benefit determination appeal stating:

> Enclosed are the copies of your appeal documents you requested.  Also included are the benefit term(s) or rule(s) we used for our review.  Please see the copy of our decision letter to learn more about other appeal rights you may have.

> *See* **Exhibit 8**.

24.     In contravention of the Contract, BCBSOK failed to explain the rationale behind its decision in any of its communications to Plaintiffs or the OID. *See* **Exhibit 1**, at pp. 58-59 and 63. It is unclear exactly which of Plaintiffs' many communications with BCBSOK it treated as the appeal, but Plaintiffs and their representatives had multiple communications with BCBSOK over the years since receiving the emergency services at

---

[1] The denial letter from BCBSOK suggests that requests from Plaintiffs' counsel for medical records prompted BCBSOK to tardily issue clear denial of Plaintiffs' appeal.

issue, and BCBSOK failed to issue the final denial of appeal to Plaintiffs until, at least, December of 2017.

25.     Inexplicably, BCBSOK only "provided" Plaintiffs with the "benefit term(s) or rule(s) [BCBSOK] used for [BCBSOK's] review" less than three weeks ago from the date of this Complaint.  Moreover, BCBSOK's reference to the "benefit term(s) or rule(s)" consisted of the **ENTIRE** Policy Documents, which consist of nearly one hundred pages. It is unreasonable to assume that the Plaintiffs, or any other insured, could read and understand all one hundred pages of the Policy Documents, much less pinpoint the specific "benefit term(s) or rule(s)" BCBSOK used in denying Plaintiffs' appeal.

26.     RMH has sought payment of the alleged balance from Plaintiffs, and, on or about November 13, 2014, RMH submitted the matter to United Resource Systems, Inc., a collections agency. RMH sued Plaintiff on April 7, 2015 to recover its billed amount. Greer County Case No. CJ-2015-8. Judgment was entered against Plaintiffs on September 4, 2015. A garnishment affidavit was served on October 9, 2015, seeking a total of $57,714.53 from Plaintiffs.

27.     While it was an absolute shock to Plaintiffs that their insurance provider would leave them holding the bag for $45,149.14 of a $49,999.00 emergency air ambulance bill, it is common practice for BCBSOK to shirk its contractual responsibility and leave its insured responsible for the bulk of financially crippling, emergency air ambulance bills. *See* **Exhibit 9** - *Air Ambulance Lawsuit Could Become Class Action*, KFOR (last updated July 14, 2015), http://kfor.com/2016/07/13/air-ambulance-lawsuit-could-become-class-action. *See* **Exhibit 10** - Editorial: *Health insurance company makes big profits by playing*

*hardball*,     St.     Louis     Post-Dispatch     (Mar.     15,     2018),
http://www.stltoday.com/opinion/editorial/editorial-health-insurance-company-makes-big-profits-by-playing-hardball/article_265b6c91-75f7-5dbb-a8d2-6038e2cfffea.html.

28.     Principally, the Contract states that "if a Network Provider bills you more than the Allowable Charge for Covered Services,[2] ***you are not responsible for the difference***." **Exhibit 1**, at p. 1. (Emphasis in original).   In other words, BCBSOK is contractually obligated to indemnify and hold Plaintiffs harmless against any in-network provider amounts billed to Plaintiffs above BCBSOK benefits paid for emergency services.

29.     BCBSOK represented, and continues to represent, the Contract to be an ACA-compliant health insurance plan.

30.     The ACA, at 42 U.S.C. § 18022(b)(4)(E), states that a qualified health plan shall not be treated as providing coverage for essential health benefits unless the plan provides that:

> (i)     **coverage for emergency department services will be provided without imposing** any requirement under the plan for prior authorization of services or **any limitation on coverage where the provider of services does not have a contractual relationship with the plan for the providing of services that is more restrictive than the requirements or limitations that apply to emergency department services received from providers who do have such a contractual relationship with the plan**

31.     Further, the OID states:

> **ACA compliant policies must cover emergency services received by an out-of-network provider as if they were in-network. . . .**" ACA compliant policies have maximum out-of-pocket limits and unlimited lifetime benefits which limits your liability or exposure (how much of the expenses you have

---

[2] Covered Services" include emergency care services. *See generally*, *Id.;* **Exhibit 2** and **Exhibit 3**.

to pay yourself).  However, out-of-network charges, **except in emergency situations**, are your responsibility and you may be balanced billed so you must read your policies very carefully and know that your provider is in network before using their services. *Id.* (Emphasis added).

*See* **Exhibit 11** - *Health Insurance Basics*, Oklahoma Insurance Department (February 25, 2015),  https://www.ok.gov/oid/Consumers/Insurance_Basics/Health.html. (Emphasis added).

32.     The OID's position makes sense considering that the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, requires that hospitals provide appropriate transfer for patients that it cannot treat to a facility where the patient's condition can be treated more effectively. As such, the emergency air ambulance transfer is a portion of the ongoing emergency medical care hospitals are **required to provide by law**.

33.     BCBSOK apparently agrees with the OID's position and EMTALA concepts as the "Selecting A Provider" section of the Contract directs that "in case of an emergency, you should seek immediate care from the closest health care Provider." *See* **Exhibit 1**, at p. 2.  The Contract defines "Provider" as "[a] Hospital, Physician, or other practitioner or Provider of medical services or supplies licensed to render Covered Services and performing within the scope of such license." *Id.* at p.73. Conspicuously, BCBSOK's foregoing directive contains no disclaimer or qualification informing Plaintiffs of the consequences if the closest emergency health care Provider happens to be out-of-network (*e.g.*, BCBSOK's refusal to cover emergency service charges in excess of BCBSOK's

nominal benefits which are billed to Plaintiff by out-of-network emergency care Providers).

34. Additionally, the Contract states that Ambulance Services are covered "to the **_closest facility_** that can provide Covered Services appropriate for your condition. If none, you are covered for trips to the closest such facility outside your local area." *See* **Exhibit 1**, at p. 29. (Emphasis in original).[3] Further, the "Ambulance Services" description in the Contract does not differentiate benefit levels between in-network and out-of-network providers.

35. Likewise, both the SOB and OOC expressly state that the level of benefits paid for emergency care services provided by in-network and out-of-network providers are precisely the same. **Exhibit 2**, at p. 3 ("emergency care services") or p. 4 ("ambulance services"); **Exhibit 3**, at pp. 3 or 4. Emergency care services are one of the only Covered Services that are covered at the same benefit level regardless of a provider's network status. *See generally*, *Id.*

36. In addition to the Policy Documents, upon information and belief, BCBSOK developed a **non-OID approved** "Summary of Benefits and Coverage" for Plaintiffs' health insurance policy ("Summary"). The Summary contains a section concerning emergency medical transportation which also expressly informs Plaintiffs that the level of benefits paid for such emergency care services provided by in-network and out-of-network

---

[3] In Plaintiffs' case, Children's in Oklahoma City, Oklahoma was the closest facility that could provide the emergency care reasonably deemed necessary for G.

providers are precisely the same.  Further, the Summary unequivocally indicates that no limitations or exclusions apply to BCBSOK benefits provided for emergency medical transportation regardless of a provider's status.

37.    In accordance with the foregoing, RMH's out-of-network emergency air ambulance transfer of G. was required to be covered under Plaintiffs' Policy Documents as if RMH was in-network.  BCBSOK's refusal to provide such coverage is a breach of its contractual obligations owed to Plaintiffs.

38.    To make matters worse, BCBSOK's OID-approved Policy Documents are completely devoid of any reference to "balance billing"[4] or air ambulance services. BCBSOK is well versed in the constant coverage issues (including insureds appeals of benefit denials) associated with emergency air ambulance providers charging exorbitant amounts for flights which BCBSOK refuses to cover.  Despite BCBSOK's knowledge of these issues, the Policy Documents do not even mention the possibility of BCBSOK denying full coverage for out-of-network air ambulance provider bills.

39.    Plaintiffs' insurance policy includes ambiguous, conflicting, and confusing terms. As such, the Policy Documents, Summary, the OID's position regarding emergency service coverage, the ACA, EMTALA, and BCBSOK's own May 29, 2014 EOB stating Plaintiffs owed zero dollars create a reasonable expectation that emergency air ambulance

---

[4] In the health care industry, balance billing "occurs when providers bill a patient for the difference between the amount they charge and the amount that a patient's insurance pays." https://www.healthinsurance.org/glossary/balance-billing/ (last visited April 21, 2018).

services would be covered in full (and the insured held harmless for any provider bills exceeding BCBSOK's paid benefits).

40.     This reasonable expectation of coverage is further evidenced by Plaintiffs' written statement in the OID Request for Assistance (December 1, 2014) which states in relevant part:

> I don't believe that I should have to pay fifty thousand dollars to the helicopter company when I have insurance that I am paying for that should cover the cost of life saving procedures such as this. The insurance company, BCBS of Oklahoma, should cover the helicopter ride cost. The point of having insurance is covering individuals in case of a catastrophic event happening such as this. If they aren't going to cover emergencies, then what is the point of having insurance?

41.     Surprisingly, BCBSOK ignored its own policy when recently informing Plaintiff of its appeal denial. In *Martin v. Health Care Service Corp.*, the Plaintiff sued BCBSOK for its failure to cover $35,702.05 of RMH's $42,604.56 bill resulting from an **October 4, 2014**, emergency air transfer. 2017 WL 3573829 (W.D. Okla. 2017). The following recites applicable findings in the Court's August 17, 2017, Memorandum Opinion and Order ("Order"):

> Nearly two years after Plaintiff's air transfer, RMH and BCBS entered into a new rate agreement and decided to apply the agreement retroactively to Plaintiff's bill, leaving the current balance at zero. . . . the Court views the outcome of Defendant's decision to apply the new rates retroactively as a **public benefit**. This is an outcome similar to bargains struck during settlement negotiations, but in this case, Plaintiff received the benefit of a zero-balance bill without participating in settlement negotiations.

*Martin*, 2017 WL 3573829 at **1-2. (Emphasis added). *See* **Exhibit 12**. The Order in *Martin* was issued **more than four months before** BCBSOK's December 30, 2017, letter to Plaintiffs stating BCBSOK reconsidered G.'s claim for services provided by RMH

**in 2014** and it determined the claim had been processed correctly. BCBSOK's refusal to retroactively apply its RMH rate agreement to G.'s claim, effectively leaving Plaintiffs with a zero balance, evidences BCBSOK's inconsistent claim processing procedures and breach of its obligations owed to Plaintiffs (*i.e.*, covering out-of-network emergency services as if they were in-networks).

42.    Emergency services should be covered as in-network, but alternatively, the Contract purports that out-of-pocket expenses are limited – even for out-of-network services. The SOB and OCC state that the out-of-pocket maximum for out-of-network services are $3,000 per Subscriber, or $9,000 for all covered family members combined for in-network services. The SOB and OCC state that the out-of-pocket limit for out-of-network services are $6,000 per Subscriber, or **$18,000** for all covered family members combined. **Exhibit 2**, at p. 2; **Exhibit 3**, at p. 3. Likewise, upon information and belief, the Summary states, "**Is there an <u>out-of-pocket</u> limit on my expenses?** Yes . . . Out-of-Network: $6,000 Individual/**$18,000** Family."

43.    The Contract further states that "[o]nce the Out-of-Pocket Limit has been reached, the amount of Allowable Charges covered by the plan will increase to 100% during the remainder of the Benefit Period." **Exhibit 1**, at p. 72.

44.    Even if Plaintiffs could be balance billed for RMH's air transfer, BCBSOK would be contractually obligated to cover, or indemnify Plaintiffs against, any amounts exceeding Plaintiffs' $18,000 out-of-pocket limit. BCBSOK neglected to address the Plaintiffs' out-of-pocket limit in any of the communications between the parties. BCBSOK's refusal to cover or indemnify Plaintiffs the portion of the $45,149.14 RMH

bill above the applicable out-of-pocket limit is a breach of its obligations arising under the Policy Documents and other legal duties owed to its insureds.

45.    Also, in the alternative, BCBSOK's Policy Documents fail to comply with the ACA's "greatest of 3 formula" relative to its coverage of out-of-network emergency services.  Specifically, 42 U.S.C. § 18022(b)(4)(E) states that a qualified health plan shall not be treated as providing coverage for essential health benefits unless the plan provides that:

> (ii)   if [emergency department services] are provided out-of-network, the cost-sharing requirement (expressed as a copayment amount or coinsurance rate) is the same requirement that would apply if such services were provided in-network[.]

> (Explanatory parenthetical added).

46.    Similarly, 45 C.F.R. § 147.138(b)(3) states:

> A group health plan or health insurance issuer complies with the requirements of this paragraph (b)(3) if it provides benefits with respect to an emergency service in an amount at least equal to the greatest of the three amounts specified in paragraphs (b)(3)(i)(A),(B), and (C) of this section (which are adjusted for **in-network** cost-sharing requirements).

> **(A)** The amount negotiated with **in-network** providers for the emergency service furnished, excluding any in-network copayment or coinsurance imposed with respect to the participant, beneficiary, or enrollee. If there is more than one amount negotiated with **in-network** providers for the emergency service, the amount described under this paragraph (b)(3)(i)(A) is the median of these amounts, excluding any **in-network** copayment or coinsurance imposed with respect to the participant, beneficiary, or enrollee....

> **(B)** The amount for the emergency service calculated using the same method the plan generally uses to determine payments for out-of-network services (such as the usual, customary, and reasonable amount), excluding any **in-network** copayment or coinsurance imposed with respect to the participant, beneficiary, or enrollee. The amount in this paragraph (b)(3)(i)(B) is

determined without reduction for out-of-network cost sharing that generally applies under the <u>plan</u> or <u>health insurance coverage</u> with respect to out-of-network services. Thus, for example, if a <u>plan</u> generally pays 70 percent of the usual, customary, and reasonable amount for out-of-network services, the amount in this paragraph (b)(3)(i)(B) for an emergency service is the total (that is, 100 percent) of the usual, customary, and reasonable amount for the service, not reduced by the 30 percent coinsurance that would generally apply to out-of-network services (but reduced by the **in-network** copayment or coinsurance that the individual would be responsible for if the emergency service had been provided **in-network**).

**(C)** The amount that would be paid under Medicare (part A or part B of title XVIII of the Social Security Act, <u>42 U.S.C. 1395</u>*et seq.*) for the emergency service, excluding any **in-network** copayment or coinsurance imposed with respect to the <u>participant</u>, beneficiary, or enrollee.

(Emphasis added).

47.     In contravention of the ACA, the Contract contains the following:

Notwithstanding anything in this Contract to the contrary, for Out-of-Network Emergency Care Services rendered by Non-Contracting Providers, the Allowable Charge shall be equal to the greatest of the following three possible amounts – not to exceed billed charges:

1. the median amount negotiated with network **or contracting Providers** for the Emergency Care Services furnished;

2. the amount for the Emergency Care Services calculated using the same method the Plan generally uses to determine payments for Out-of-Network Provider services, but substituting the in-network **or contracting cost-sharing provisions** for the out-of-network or non-contracting Provider cost sharing provisions; or

3. the amount that would be paid under Medicare for the Emergency Care Services.

Each of these three amounts is calculated excluding any network **or contracting Provider** Copayment or Coinsurance imposed with respect to the Subscriber.

**Exhibit 1**, at p. 8.  BCBSOK's use of "contracting Provider" and "contracting cost-sharing provisions" differs from the ACA's requirements for calculating the allowable charge for emergency services rendered by out-of-network providers, which contains no reference to "contracting" providers. *See* 45 C.F.R. § 147.138(b)(3).

48.    Under the Contract, it appears that a "contracting Provider" is a provider class different from "Network Providers" and BCBSOK's benefit obligations are likewise different for "contracting Providers" and "Network Providers."  *Id.* at p. 1.  Thus, the coverage provisions for out-of-network emergency services are improperly more restrictive than coverage provisions for the same services provided in-network in violation of the ACA.

49.    Upon information and belief, if BCBSOK has negotiated a rate with network or contracting air ambulance providers that is greater than amounts identified in 45 C.F.R. § 147.138(b)(3)(B) & (C) and/or (2) & (3) set forth in paragraph 46 hereinabove, then BCBSOK failed to apply the median amount negotiated with said providers to Plaintiffs' air ambulance bill as required by the Contract and/or the ACA.  *See generally*, **Exhibit 12**.

### III.    CLAIMS FOR RELIEF

#### COUNT I: BREACH OF CONTRACT AGAINST BCBSOK

50.    Plaintiffs incorporate the allegations outside of this cause of action as if set forth in Count I in full.

51.    BCBSOK and Plaintiffs were parties to the Policy Documents on the date of G.'s RMH emergency air transfer to Children's that is the subject of this lawsuit.

52.     The Policy Documents, along with the Summary, the EOB dated May 29, 2014, the OID's position regarding coverage of in-network and out-of-network emergency services, the ACA, and EMTALA, created, and/or reinforced, Plaintiffs' reasonable expectation that RMH's emergency air transfer would be covered in the same fashion as if the air transfer was an in-network emergency services.

53.     BCBSOK materially breached its contractual obligations owed to Plaintiffs by refusing to the cover RMH's emergency air transfer as if it was an in-network emergency service.

54.     BCBSOK materially breached its contractual obligations owed to Plaintiffs by BCBSOK failing to issue the final denial of appeal to Plaintiffs until, at least, December of 2017.

55.     BCBSOK further materially breached its contractual obligations owed to Plaintiffs by refusing to follow its past practice of retroactively applying its new rate agreement with RMH to Plaintiffs' RMH bill, which would have effectively left Plaintiffs with a zero balance.  *See* **Exhibit 12**.

56.     Additionally, and in the alternative, BCBSOK materially breached the Policy Documents by refusing to apply Plaintiffs' out-of-pocket individual or family limits of $3,000 and $9,000, respectively, if emergency services are treated properly as in-network, or in the alternative $6,000 and $18,000, respectively, to RMH's charges for the subject emergency air transfer and by further refusing to cover, or indemnify Plaintiffs against, any amounts exceeding said limit.

57.     Additionally, and in the alternative, BCSOK materially breached the Policy Documents by: (i) misrepresenting the Contract as ACA-compliant; and (ii) failing to utilize the appropriate "greatest of three" formula mandated under the ACA when processing Plaintiffs' claim for benefits pertaining to RMH's emergency air transfer of G. to Children's.

58.     As a direct and proximate result of BCBSOK's breach of contract, Plaintiffs have suffered harm for which they are entitled to recover damages in the amount of the Alleged Balance of $45,149.14 plus attorney's fees, costs incurred, and additional damages arising by virtue of collections actions and litigation initiated by RMH.

## COUNT II: BAD FAITH AGAINST BCBSOK

59.     Plaintiffs incorporate the allegations outside of this cause of action as if set forth in Count II in full.

60.     RMH's out-of-network emergency air ambulance transfer of G. was required to be covered under Plaintiffs' Policy Documents as if RMH was in-network.  BCBSOK's refusal to provide such coverage is a breach of its legal obligations owed to Plaintiffs requiring BCBSOK to deal fairly and in good faith with Plaintiffs.

61.     At the very least, the Policy Documents and Summary include misleading, confusing, ambiguous, and conflicting terms regarding coverage for emergency services; however, Plaintiffs reasonably relied upon BCBSOK's assurance and expected that emergency services would be covered as in-network, and thus, Plaintiffs would not be financially responsible for amounts charged by RMH above BCBSOK's benefit payments.

BCBSOK's refusal to provide such coverage is a breach of its legal obligations owed to Plaintiffs requiring BCBSOK to deal fairly and in good faith with Plaintiffs.

62.    Further, BCBSOK's refusal to cover Plaintiffs' claim as stated above was unreasonable, and in bad faith, under the circumstances because it did not perform a proper investigation of the claim.  For example, BCBSOK did not timely investigate the claim as the very earliest denial of Plaintiffs' benefit appeal was issued to Plaintiffs on December 30, 2017, nearly four years after the air transfer.

63.    Moreover, BCBSOK's refusal to cover Plaintiffs' claim as stated above was unreasonable, and in bad faith, under the circumstances because it did not evaluate the results of the investigation properly and had no reasonable basis for the refusal.  For example, BCBSOK failed to follow its past practice of retroactively applying its new rate agreement with RMH to Plaintiffs' RMH bill, which would have effectively left Plaintiffs with a zero balance. *See* **Exhibit 12**.

64.    BCBSOK's refusal to cover Plaintiffs' claim as stated above also was unreasonable, and in bad faith, under the circumstances because the amount BCBSOK offer to satisfy the claim ($4,849.86 of RMH's $49,999.00 total bill) was unreasonably low.  This is especially true considering that BCBSOK is well versed in the constant coverage issues (including insureds appeals of benefit denials) associated with emergency air ambulance providers charging exorbitant amounts for flights which BCBSOK refuses to cover, and BCBSOK's past practice regarding retroactive application of its new rate agreement with RMH to other emergency air ambulance bills arising from 2014 air transfers.  *See* **Exhibit 12**

65.    Additionally, and in the alternative, the Policy Documents and Summary create a reasonable expectation of a limit on out-of-pocket expenses – even for out-of-network services.  BCBSOK's refusal to cover RMH's emergency air transfer so as to cover, and indemnify Plaintiffs against, amounts billed above the limit for out-of-pocket expenses is a breach of its obligations owed to Plaintiffs requiring BCBSOK to deal fairly and in good faith with Plaintiffs.

66.    Additionally, and in the alternative, BCBSOK acted in bad faith toward Plaintiffs when it: (i) misrepresented the Contract as ACA-compliant; and (ii) failed to utilize the appropriate "greatest of three" formula mandated under the ACA when processing Plaintiffs' claim for benefits pertaining to RMH's emergency air transfer of G. to Children's.

67.    A serious public hazard exists because of BCBSOK's misconduct, as many individuals have the same type of health insurance plan.

68.    The existence of a public hazard was reinforced in a similar lawsuit against BCBSOK and RMH regarding BCBSOK's failure to properly cover emergency air ambulance services when the United States District Court for the Western District of Oklahoma determined that it was in the public interest when BCBSOK entered into a rate agreement with RMH and retroactively applied the rate agreement to the charges assessed against the plaintiff's air ambulance bill, resulting in total satisfaction of the bill. *See* **Exhibit 12**, at *2.

69.    Upon information and belief, BCBSOK enjoys increased profitability from unlawfully limiting such emergency coverage.

70.     BCBSOK's refusal to lawfully cover the emergency services, failure to address the issues raised on appeal, and material misrepresentations regarding coverage were unreasonable under the circumstances, and BCBSOK thereby intentionally and maliciously violated its duty of good faith and fair dealing with Plaintiffs.

71.     As a direct and proximate result of BCBSOK's breach of its duty of good faith and fair dealing, Plaintiffs have suffered harm, including mental anguish and loss of reputation (*e.g.*, impairment of credit), and have incurred costs and attorney fees, for which they entitled to recover damages, along with punitive damages exceeding $75,000.00.

### COUNT III: FRAUD, CONSTRUCTIVE FRAUD AND MISREPRESENTATION AGAINST BCBSOK

72.     Plaintiffs incorporate the allegations outside of this cause of action as if set forth in Count III in full.

73.     BCBSOK intentionally represented, and continues to represent, the Contract to be ACA compliant.

74.     Plaintiffs entered the Contract, relying on BCBSOK's representation that the Contract was ACA-compliant.

75.     BCBSOK, in denying payment for the emergency air ambulance services based on the contention that RMH is an "out-of-network" provider, demonstrates that the Contract, as construed by BCBSOK, does not cover emergency services as "in-network."

76.     Moreover, and in the alternative, BCBSOK materially and intentionally misrepresented to Plaintiffs that the out-of-pocket individual and family limit was $6,000 and $18,000, respectively, for out-of-network services.

77.     Moreover, and in the alternative, the Allowable Charge for Out-of-Network Emergency Care Services set forth in the Contract differs materially from the ACA's requirements relative to coverage of emergency care services. Therefore, BCBSOK materially misrepresented the Contract as ACA-compliant.

78.     BCBSOK had a duty to disclose its position concerning emergency air ambulance service charges, as well as the fact that it had no air ambulance "in-network."

79.     Plaintiffs relied on BCBSOK's material misrepresentations and failure to disclose resulting in them suffering harm for which they are entitled to recover damages, along with punitive damages exceeding $75,000.00.

## COUNT IV: DECLARATORY JUDGMENT

80.     Plaintiffs incorporate the allegations outside of this cause of action as if set forth in Count IV in full.

81.     Plaintiffs are judicially determined to owe the Alleged Balance and additional costs, attorney fees, and other charges assessed because BCBSOK failed or refused to perform its duties under the Contract.

82.     Moreover, BCBSOK continues to misrepresent the Contract as ACA-compliant.

83.     BCBSOK entered into an agreement with RMH in a 2017 case, which Judge Cauthron characterized as a "public benefit." **Exhibit 12**, at *2. Therefore, BCBSOK should have paid, on behalf of Plaintiffs, the amount it agreed was proper to RMH.

84.     Because of these controversies, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations, and liabilities that exist among the parties.

85.     Plaintiffs demand judgment against Defendant declaring BCBSOK's failure or refusal to pay the amount it agreed to pay to RMH violates applicable law, thus rendering the Contract noncompliant under the ACA, establishing a breach, and showing BCBSOK's bad faith.

86.     BCBSOK owed its insureds a duty to pay the amounts it had agreed with RMH were owed for air ambulance transport.

## IV.    CLASS ACTION

87.     Plaintiffs incorporate the allegations outside of these class claims as if set forth herein in full.

88.     With respect to all Counts above, Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the following defined Class:

> Insureds under any BCBSOK Individual Comprehensive Health Care Services Benefits policy or BCBSOK Individual PPO Multistate Comprehensive Health Care Services Benefits policy (including both "Off Exchange" and "On Exchange" policies) from January 1, 2014, through present who received emergency services from an air ambulance provider for which a balance bill was allegedly due to said air ambulance provider from Insured and for which:

> (i) BCBSOK did not cover, and/or indemnify insured against, through retroactive application of its rate agreement with RMH deemed to be a public benefit (**Exhibit 12**, at *2); or

(ii) alternatively, BCBSOK's payments left an insured owing more than the applicable annual out-of-pocket limit.

89.     Excluded from the Class are: 1) any Judge or Magistrate presiding over this action and their family members; 2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant has a controlling interest, and their current or former officers and directors; 3) persons who properly execute and file a timely request for exclusion from the Class; and 4) the legal representatives, successors or assigns of any such excluded persons.

90.     The named Plaintiffs are adequate representatives of the Class and will fairly represent and protect the Class because their interests do not conflict with the interests of the other Class members. Furthermore, Plaintiffs have retained counsel with extensive experience in health care law, civil trial practice, class actions, insurance law, and other related areas.

91.     Additionally, Plaintiffs have the desire, competency, and capacity to serve as Class representative. Plaintiffs are personal victims of BCBSOK's conduct which occurred after emergency care was rendered. Plaintiffs have personal knowledge and experience with the facts of the current case, BCBSOK's conduct, BCBSOK's insurance policies, and the common language existing in those policies.

92.     Members of the Class are so numerous that joinder of all members is impracticable, as, upon information and belief, and according to the Oklahoma Insurance Market Analysis prepared for the Oklahoma State Department of Health, it was estimated that individual insurance policies amounted to 171,800 policies in 2014 and 223,500

polices in 2015, and BCBSOK held a 79.3% Market Share of individual policies sold in 2014. This 79.3% market share equates to approximately 313,473 individual insurance policies sold by BCBSOK in 2014 and 2015 alone. While each of these insureds may not have received out-of-network emergency medical services and subsequently been balance billed, even if 1% of these individuals fall into the Class, the approximate number of Class members would be 3,315 individuals.

93.    BCBSOK has acted on grounds generally applicable to the Class with respect to its contractual obligations, duty of good faith and fair dealing, and fraudulent conduct such that final relief with respect to the whole Class is appropriate. Ultimately, the conduct by BCBSOK harmed all Class members similarly in administration of the Class members' policies.

94.    Plaintiffs' claims are typical of the entire Class because the Plaintiffs and each member of the Class were issued policies containing identical language pertaining to the subject matter of this litigation and sustained and continue to sustain similar injury arising out of BCBSOK's conduct and improper practices as more fully set forth throughout this Complaint.

95.    A class action is appropriate as to all Counts identified herein because common issues and questions of fact and law exist among all members of the Class and such issues and questions of fact and law common to the Class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.  A class action is superior because: (A) the Class represents a number of individuals who may have

been issued individual balance bills of tens of thousands of dollars to $50,000.00 and, as a result, the class contains individuals who likely lack the funds to support a lawsuit against BCBSOK; (B) upon information and belief, no current pending litigation against BCBSOK incorporates the Class members' claims against BCBSOK as more fully set forth herein; (C) the interests of the Class, BCBSOK, and the judiciary in resolving these matters in one forum without the need for a multiplicity of actions are great; and (D) the difficulties likely to be encountered in the management of the class action will be slight in relation to the potential benefits achieved if each Class member were to bring their own lawsuit, not just those members who could afford to bring an individual lawsuit.

96.    Plaintiffs are typical of the class both in harm and in claims. All proposed class members, including Plaintiffs, were issued identical form insurance policies from BCBSOK, received emergency care services/emergency medical transportation from an apparent out-of-network provider, and were subsequently balance billed without BCBSOK indemnifying or providing the appropriate amount of benefits as if the services were provided in-network all in violation of the law and in breach of BCBSOK's policies and the ACA. As Plaintiffs proceed in action against BCBSOK for Breach of Contract, Bad Faith, Misrepresentation and Fraud, they will inherently advance the claims and interest of the remainder of the Class members due to the identical contractual language and treatment among all Class members.

WHEREFORE, the Plaintiffs pray the following relief be granted:

i) Judgment against BCBSOK for breaching the Contract in the amount of the Alleged Balance of $45,149.14 plus attorney's fees, costs incurred, and additional damages arising by virtue of collections suit initiated by RMH;

ii) Judgment against BCBSOK for compensatory and punitive damages in excess of $75,000.00 for violating its duty of good faith and fair dealing;

iii) Judgment against BCBSOK for compensatory and punitive damages in excess of $75,000 for fraud and misrepresentation;

iv) Judgment against BCBSOK declaring that the Contract and policies included in the Class are not ACA-compliant;

v) Prejudgment and post-judgment interest as provided by law; for an award of all reasonable attorney's fees and costs incurred herein;

vi) An order of this Court to certify this case as a class action, to appoint the Plaintiffs as Class representatives, to appoint the undersigned attorneys as Class counsel, judgment against BCBSOK on behalf of the Class, along with punitive damages with respect to BCBSOK's improper conduct; and

vii) For any and all such other relief as the law allows or this Court deems in the interest of justice.

Dated April 27, 2018.

Respectfully submitted,

/S/ Noble McIntyre

_____

Noble K. McIntyre, OBA #16359
Jeremy Thurman, OBA #19586
McIntyre Law Firm
8601 South Western Avenue
Oklahoma City, OK 73139
Telephone: (877) 917-5250
Facsimile: (405) 917-5405
Email: noble@mcintyrelaw.com


/S/ Edward L. White

_____

Edward L. White, OBA #16549
Kerry D. Green, OBA #31998
Edward L. White, PC
829 East 33rd Street
Edmond, Oklahoma 73013
Telephone: (405) 810-8188
Facsimile: (405) 608-0971
Email:  ed@edwhitelaw.com
        kerry@edwhitelaw.com

/S/    Mike Torrone

_____

LOGAN & LOWRY, LLP
101 South Wilson Street
P. O. Box 558
Vinita, OK 74301
(918) 256-7511
(918) 256-3187 (*fax*)
mtorrone@loganlowry.com

Attorneys for Plaintiffs Christina and Jeffrey
Terry, on their own behalf and on behalf of their
minor child, G. Terry, and on behalf of all others
similarly situated