IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTINA and JEFFREY TERRY, husband and wife, each individually and on behalf of their minor child, G. TERRY, and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION, a mutual legal reserve Company, d/b/a BLUE CROSS AND BLUE SHIELD OF OKLAHOMA,<br><br>　　　　　　　　Defendant. | Case No. CIV-18-0415-C |

MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant Health Care Service Corporation's Motion to Dismiss (Dkt No. 22). Plaintiffs have filed a Response (Dkt. No. 27), and Defendant has filed a Reply (Dkt. No. 28). The motion is now at issue.

I. Background

Plaintiffs Christina and Jeffrey Terry are residents of Greer County, Oklahoma. At all times during the relevant events, Blue Cross and Blue Shield of Oklahoma ("BCBSOK") insured Plaintiffs. On January 13, 2014, Plaintiff Christina Terry gave birth to a child, G. Terry, at Great Plains Regional Medical Center in Elk City, Oklahoma. G. Terry was born premature and his lungs were not fully formed. On January 15, 2014, G. Terry's medical condition deteriorated to the point that his doctor determined that the baby needed care only available at Children's Hospital at the University of Oklahoma

Medical Center ("Children's Hospital"). The doctor determined that G. Terry would not survive the length of an ambulance ground transfer and recommended air transfer to Children's Hospital. Rocky Mountain Holdings, LLC ("RMH"), evacuated G. Terry by ambulance air transfer to Children's Hospital. RMH does not have a contract for services with Defendant BCBSOK and is considered out-of-network and not covered by Plaintiffs' insurance plan. RMH billed Plaintiffs $49,999.00 for the air ambulance transfer.

Plaintiffs are insured through an individual preferred provider organization ("PPO insurance contract"). (Compl., Dkt. No. 1-1, pp. 1-2.) In addition to Plaintiffs' PPO insurance contract, Plaintiffs' additional policy explanations and benefits are set forth in the Schedule of Benefits for Comprehensive Health Care (Compl., Dkt. No. 1-2) and the Outline of Coverage (Compl., Dkt. No. 1-3).

On May 29, 2014, Defendant BCBSOK sent Plaintiffs their first EOB. (Compl., Dkt. No. 1-4, p. 1.) The EOB stated: "Your claim has been denied. We have requested additional information from your provider which is required in order to process this claim. Your claim will be processed when this additional information is received. No payment can be made at this time." (Compl., Dkt. No. 1-4, p. 1.) On September 4, 2014, Plaintiffs received another EOB. Defendant BCBSOK informed Plaintiffs they adjusted the total benefits approved to $2,909.92 and Plaintiffs owed the remaining $47,089.08. (Compl., Dkt. No. 1-5, p. 1.) After receiving the EOB, Plaintiffs verbally appealed the determination of benefits to Defendant BCBSOK and was told "BCBSOK would review the claim." (Compl., Dkt. No. 1, p. 4.)

On October 7, 2014, Plaintiffs received an EOB adjusting the total benefits approved to $4,849.86 and stating Plaintiffs owed the remaining $45,149.14. (Compl., Dkt. No. 1-6, p. 1.) Plaintiffs subsequently filed a complaint with the Oklahoma Insurance Department ("OID") for further assistance in the matter. In their Complaint, Plaintiffs state they appealed to OID in late 2014:

> I don't believe I should have to pay fifty thousand dollars to the helicopter company when I have insurance that I am paying for that should cover the cost of life saving procedures such as this. The insurance company . . . should cover the helicopter ride cost. The point of having insurance is covering individuals in case of a catastrophic event happening such as this. If they aren't going to cover emergencies, then what is the point of having insurance?

(Compl., Dkt. No. 1, p. 5.)

RMH continued to seek payment of the outstanding bill for the air ambulance transfer and on November 13, 2014, RMH referred the matter to a collection agency, United Resource Systems, Inc., which sued Plaintiffs to recover the amount.[1] Plaintiffs' Complaint alleges that on or about "December 31, 2014 BCBSOK responded to the OID's inquiry regarding Plaintiffs' Request for Assistance reiterating that $4,849.86 was the total amount BCBSOK would cover and that Plaintiffs were responsible for the remaining $45,149.14." (Compl., Dkt. No. 1, p. 5.) Then, on December 30, 2017, Plaintiffs received a letter from Defendant BCBSOK stating that the organization had reconsidered Plaintiffs' appeal and the letter stated the claim had been processed correctly. (Compl., Dkt. No. 1-

---

[1] On September 4, 2015, judgment was entered against Plaintiffs along with a garnishment affidavit with a total amount of $55,714.53.

7, p. 1.)² Plaintiffs filed the instant action on March 27, 2018, and allege Defendant BCBSOK breached its contractual obligations, acted in bad faith and allege fraud, constructive fraud, and misrepresentation.

## II. Standard

The standard for consideration of motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) is set forth in the Supreme Court's decision in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and the subsequent decision in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In those cases, the Supreme Court made clear that to survive a motion to dismiss, a pleading must contain enough allegations of fact which, taken as true, "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plaintiffs must "nudge[] their claims across the line from conceivable to plausible" to survive a motion to dismiss. Id. Thus, the starting point in resolving the Motion is to examine the factual allegations supporting each claim that Defendant wishes the Court to dismiss. The Court will accept all well-pleaded factual allegations in the Complaint as true and construe them in the light most favorable to the nonmoving party. Peterson v. Grisham, 594 F.3d 723, 727 (10th Cir. 2010). However, conclusory allegations need not be accepted as true. Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011).

A federal court, sitting in diversity, will apply the state law for statute of limitation purposes; as a result, Oklahoma law prescribes the statute of limitation rules in this action.

---

² The Court notes that this letter seems to be regarding a request for documents regarding Plaintiffs' claim. It is not clear from the record before the Court that the letter was solely concerning Plaintiffs' appeal.

4

"'At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute of limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute.'" Whitington v. Sokol, 491 F. Supp. 2d 1012, 1018 (D. Colo. 2007) (quoting Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1288 n.13 (11th Cir. 2005)).

III. Discussion

A. Breach of Contract

As a threshold issue, this Court will first address the statute of limitations applicable to Plaintiffs' breach of contract claim. Generally, 12 Okla. Stat. § 95(a)(1) limits breach of contract claims to five years. "'Choosing which state statute to borrow is unnecessary, however, where the parties have contractually agreed upon a limitations period.'" Salisbury v. Hartford Life & Accident Ins. Co., 583 F.3d 1245, 1247 (10th Cir. 2009) (quoting Northlake Reg'l Med. Ctr. v. Waffle House Sys. Emp. Benefit Plan, 160 F.3d 1301, 1303 (11th Cir. 1998)).

The contractual limitations policy at issue states:

**Limitation of Actions**

No legal action may be taken to recover Benefits within 60 days after a Properly Filed Claim has been made. No such action may be taken later than three years after expiration of the time within which a Properly Filed Claim is required by this Contract. In addition, the Subscriber must exhaust his/her appeal rights, as set forth in the "Complaint/Appeal Procedure" section of this Contract, before pursuing other legal remedies.

(Compl., Dkt. No. 1-1, p. 52.) Additionally, the policy states: "Your Properly Filed Claim must be furnished to the Plan within 90 days after the end of Benefit Period for which the claim is made." (Compl., Dkt. No. 1-1, p. 50.) The Policy defines "Benefit Period" as

5

"[t]he period of time during which you receive Covered Services for which the Plan will provide Benefits." (Compl., Dkt. No. 1-1, p. 71.) The Schedule of Benefits for Comprehensive Health Care Services states that the Benefit Period/Policy Year is a calendar year. (Compl., Dkt. No. 1- 2, p. 1.) Plaintiffs' outline of coverage states: "This outline of coverage provides only a very brief description of the important features of your Contract. This is not the insurance Contract, and only the actual Contract provisions will control." (Compl., Dkt. No. 1-3, p. 1.) The outline of coverage states the Benefit Period/Policy Year is for a calendar year.

Defendant argues that Plaintiffs' breach of contract claim is "barred by the claims limitations period outlined in the Policy." (Def.'s Mot., Dkt. No. 22, p. 9.) Defendant seems to argue, although it does not specifically state, that the inception of Plaintiffs' coverage—with regard to the instant circumstances—began on January 1, 2014. Defendant cites Alexander v. Oklahoma, No. 03-C-133-E, 2004 U.S. Dist. LEXIS 5131, at *7 (N.D. Okla. Mar. 19, 2004), for the proposition that if "the complaint make[s] clear that the right sued upon has been extinguished, plaintiff has the burden of establishing a factual basis for tolling the statute." In order to equitably toll the statute of limitations, this Court must determine whether the conduct of the insurer "interrupted the running of the period of limitations and . . . excused the insured from strict compliance with the terms of the policy, as to the time within which such an action must be brought." Ins. Co. of North Am. v. Bd. of Ed., 196 F.2d 901, 903 (10th Cir. 1952).

Defendant interprets the Limitation of Actions clause, other portions of the policy, and the definition section to argue that the contractual limitations period for a legal action

6

is limited to "'three years after expiration of the time within which a Properly Filed Claim is required by this Contract.'" (Def.'s Mot., Dkt. No. 22, p. 9 (quoting Compl, Dkt. No. 1-1, p. 52.)) Defendant argues that a properly filed claim "must be filed 'within 90 days after the end of Benefit Period [*i.e.,* Calendar Year] for which the claim is made.'" (Def.'s Mot., Dkt. No. 22, p. 9 (quoting Compl, Dkt. No. 1-1, p. 50).) Defendant concludes that Plaintiffs had until March 31, 2018, to file a claim and since Plaintiffs didn't file until April 27, 2018, Plaintiffs' breach of contract claim is barred by the policy language.

In Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980), the Tenth Circuit found that the statute of limitations issue can be addressed in a motion to dismiss only when "the dates given in the complaint make clear that the right sued upon has been extinguished." Id. In Plaintiffs' Complaint, they do not concede or admit definitively that the action was filed outside the statute of limitations and rely on the doctrine of reasonable expectations. (See Walton v. Potter, No. 05-C-3809, 2006 WL 3341187, *1 (N.D. Ill. Nov. 16, 2006) (unpublished opinion), "'The statute of limitations issue may be resolved definitively on the face of the complaint when the plaintiff pleads too much and admits definitively that the applicable limitations period has expired.' But, '[u]nless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development.'") (quoting Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n, 377 F.3d 682, 688 (7th Cir. 2004), and Foss v. Bearns, Stearns & Co., Inc., 394 F.3d 540, 542 (7th Cir. 2005)).

Here, the dates in the Complaint do not make clear the right sued upon has been extinguished. Construing the facts in the light most favorable to the Plaintiffs, this Court finds that Plaintiffs have stated a claim to relief plausible on its face.

Defendant also raises the argument that as a matter of law, Plaintiffs have failed to state a claim for breach of contract. "Under Oklahoma law, to recover under a claim for breach of contract a plaintiff must show: 1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." Bayro v. State Farm Fire & Cas. Co., 2015 WL 4717166 (W.D. Okla. Aug. 7, 2015) (citing Digital Design Group, Inc. v. Information Builders, Inc., 24 P.3d 834, 843 (Okla. 2001)). In this instance, Plaintiffs have identified a PPO insurance policy at issue. Plaintiffs allege that Defendant breached the contract because Plaintiffs had a reasonable expectation of coverage and as a result they argue Defendant breached the contract by not paying the remaining balance. Plaintiffs assert damages as a direct result of Defendant's breach. This Court finds Plaintiffs have stated a claim for relief plausible on its face. As a result, Defendant's Motion to Dismiss regarding the breach of contract claim is denied.

B. Bad Faith

Defendant moves for dismissal of Plaintiffs' bad faith claim as time barred. The applicable provision for statute of limitations in a bad faith action is two years. See 12 Okla. Stat. § 95; Blue v. Universal Underwriters Life Ins. Co., 612 F. Supp. 2d 1201, 1203 (N.D. Okla. 2009). "Oklahoma courts apply the so-called "discovery rule" to determine when the two-year statute of limitations accrues." Erikson v. Farmers Grp., Inc., 151 F. App'x 672, 676 (10th Cir. 2005) (citing Smith v. Baptist Found. of Okla., 50 P.3d 1132,

1137 (2002)). This rule states that "the limitations period does not begin to run until the date the plaintiff knew or should have known of the injury." The Samuel Roberts Noble Found., Inc. v. Vick, 1992 OK 140, ¶ 22, 840 P.2d 619, 624. In Bank of America, N.A. v. Dakota Homestead Title Insurance Co., 553 F. App'x 764, 768 (10th Cir. 2013), the Tenth Circuit found that separate claim "denial[s] could . . . constitute a separate bad faith act that would start the statute of limitations running anew." Id. (citing Cork v. Sentry Ins., 194 P.3d 422, 427 (Colo. Ct. App. 2008)).

Plaintiffs allege "multiple ongoing acts constituting bad faith." (Pls.' Resp., Dkt. No. 27, p. 12.) These alleged acts include: (1) When BCBSOK refused to cover G. Terry's air ambulance transfer as if RMH was in-network; (2) Plaintiffs reasonably relied upon BCBSOK's assurance and expected that emergency services would be covered as in-network; (3) BCBSOK did not conduct a proper investigation of Plaintiffs' claim; (4) BCBSOK failed to follow its past practice of retroactively applying its new rate agreement with RMH to Plaintiffs' RMH bill; and (5) BCBSBOK misrepresented the insurance contract as Affordable Care Act ("ACA")-compliant and failed to utilize the "greatest of three" formula mandated under the ACA when processing Plaintiffs' claim. (Compl., Dkt. No. 1, pp. 18-21.) Defendant argues that the "statute of limitations for both causes of action began to run . . . when Plaintiffs became aware of BCBSOK's determination regarding the Air Ambulance Claim." (Def.'s Mot., Dkt. No. 22, p. 16.)

Here, as detailed above, the dates listed in the Complaint do not make it clear the right has been extinguished and Plaintiffs allege behavior that still could fall within the prescribed statute of limitations. This Court finds that Plaintiffs' allegations are sufficient

to state a plausible claim for relief on their face.  As a result, Defendant's Motion to Dismiss regarding Plaintiffs' bad faith claim is denied.

Defendant also raises the argument that Plaintiffs have failed to state a claim for bad faith.  "[T]he essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy . . . ."  McCorkle v. Great Atl. Ins. Co., 1981 OK 128, ¶ 21, 637 P.2d 583, 587.  Defendant must also reasonably investigate Plaintiffs' claim.  "[W]hen presented with a claim by its insured, an insurer must conduct an investigation reasonably appropriate under the circumstances and the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient."  Newport v. USAA, 2000 OK 59, ¶ 10, 11 P.3d 190, 195 (citations and internal quotations omitted).  Here, Plaintiffs allege Defendant has unjustifiably withheld payment for G. Terry's air ambulance transfer.  "BCBSOK, again, acted in bad faith when it failed to satisfy its duty to process Plaintiffs' claim based on an investigation . . . when it failed to apply RMH's 2017 participating provider agreement to Plaintiffs' claim." (Pls.' Resp., Dkt. No. 27, p. 26.)  Defendant argues that Plaintiffs' bad faith "allegations consist of nothing more than conclusions that ignore the plain language of the Policy." (Def. Mot., Dkt. No. 22, p. 28).  In this instance, construing the facts in the light most favorable to Plaintiffs, this Court finds that Plaintiffs have pled a claim for bad faith.  As a result, Defendant's Motion to Dismiss regarding Plaintiffs' bad faith claim is denied.

C.  Fraud, Constructive Fraud, and Misrepresentation

The statute of limitations for a fraud claim is two years.  12 Okla. Stat. § 95(A)(3). In order to establish a claim for fraud the claim "must be distinct from a claim for breach of contract."  Edwards v. Farmers Ins. Co., No. 08-CV-730-TCK-PJC, 2009 WL 4506218, at *5 (N.D. Okla. Nov. 24, 2009).  In general, "the wrong giving rise to a tort claim must be independent of the breach of contract."  KT Specialty Distrib., LLC v. Xlibris Corp., No. 08-CV-0249-CVE-SAJ, 2008 WL 4279620, at *4 (N.D. Okla. Sept. 11, 2008).

Plaintiffs argue their fraud claim is distinct and allege:  1) BCBSOK misrepresented the Contract to be ACA compliant; 2) BCBSOK misrepresented the maximum out-of-pocket limit for out-of-network services to be $6,000 for individuals and $18,000 for families; 3) BCBSOK failed to disclose its position concerning emergency air ambulance service charges, as well as the fact that it had no air ambulance "in-network."  "Plaintiffs do not contend that BCBSOK committed fraud because it intended to and did breach the contract . . . instead [Plaintiffs] contend that BCBSOK fraudulently represented that the Contract was ACA compliant and that the out-of-pocket limits were $6,000 (for individuals) and $18,000 (for families)."  (Pls.' Mot., Dkt. No. 27, p. 28.)

Defendant argues that "Oklahoma [courts] routinely dismiss fraud claims where, as here, a breach of contract and fraud claim are based on precisely the same conduct."  (Def.'s Mot., Dkt. No. 22, p. 30.)  Defendant cites McGregor v. National Steak Processors, Inc., No. 11-CV-0570-CVE-TLW, 2012 WL 314059, at *3 (N.D. Okla. Feb. 1, 2012), to support its proposition that Plaintiffs' breach of contract claim and fraud claim are arising from the

11

exact same conduct. Defendant draws a parallel with McGregor to the instant case and argues that Plaintiffs' "breach of contract and fraud claims are also based on precisely the same alleged conduct-namely, BCBSOK's reimbursement of Plaintiffs' Air Ambulance Claim." (Def.'s Mot., Dkt. No. 22, p. 30.) Defendant argues that Plaintiffs did not adhere to Fed. R. Civ. P. 9(b) and argues that Plaintiffs' "fraud allegations are far too broad to come anywhere close to meeting the particularity requirement." (Def.'s Mot., Dkt. No. 22, p. 30.)

As a threshold issue, this Court finds that Plaintiffs have pled their claim with sufficient particularity and met the requirements of Fed. R. Civ. P. 9(b). In addressing the Plaintiffs' fraud claim, this Court notes that "mere allegations of fraud in an action based solely in contract are insufficient to state a cause of action based on fraud." Multimedia Games, Inc. v. Network Gaming Int'l Corp., No. 98-CV-67-H(M), 1999 WL 33914442 at *7 (N.D. Okla. 1999).

In order to properly plead a claim of fraud, "a complaint . . . [must] 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" Koch v. Koch Indus., Inc., 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting Lawrence Nat'l Bank v. Edmonds, 924 F.2d 176, 180 (10th Cir. 1991)). In this instance, Plaintiffs set forth the coverage period of the PPO insurance contract and various representations Defendant BCBSOK made to Plaintiffs regarding the contents of their PPO insurance contracts. Plaintiffs set forth the identity of the party as Defendant BCBSOK and its representations and specifically allege portions of the PPO insurance contract as being non-compliant with the Affordable Care Act. Plaintiffs also

allege with particularity the monetary damages they incurred as a result of Defendant BCBSOK's conduct.

Here, construing the facts in the light most favorable to Plaintiffs, this Court finds that Plaintiffs have cited distinct, independent conduct to properly plead a fraud claim. As a result, Defendant's Motion to Dismiss regarding Plaintiffs' fraud claim is denied.

D. Declaratory Judgment

"Neither the applicable ACA provisions nor its regulations create an explicit private cause of action." Air Evac EMS Inc. v. USAble Mutual Ins. Co., No. 4:16-CF-00266 BSM, 2018 WL 2422314, at *3 May 29, 2018 (E.D. Ark. May 29, 2018). "The Declaratory Judgment Act provides no separate cause of action to enforce federal statutes. It provides for an alternative mode of relief when a particular law creates a cause of action." Id. (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950). As a result, "the Declaratory Judgment Act does not create a private cause of action to enforce the applicable provisions of the ACA." Id.

Defendant seeks dismissal of Plaintiffs' request for declaratory judgment. Plaintiffs sought declaratory judgment pursuant to the Declaratory Judgment Act. 28 U.S.C. § 2201(a). Plaintiffs assert that BCBSOK's insurance contract is noncompliant under the ACA. Plaintiffs "demand judgment against Defendant declaring BCBSOK's failure or refusal to pay the amount it agreed to pay to RMH violates applicable law, thus rendering the Contract noncompliant under the ACA, establishing a breach, and showing BCBSOK's bad faith." (Compl., Dkt. No. 1, p. 23.) "Plaintiffs simply ask [the] Court to declare that

the Contract terms differ, as urged by BCBSOK in this case, materially from those required by the ACA." (Pls.' Resp., Dkt. No. 27, pp. 31-32.)

Defendant argues that "Plaintiffs do not allege a plausible claim for declaratory judgment . . . under Oklahoma law." (Def.'s Mot., Dkt. No. 22, p 31.) Defendant posits that "Plaintiffs cannot use the Declaratory Judgment Act to seek a declaration that the Policy is non-compliant under the ACA because the ACA does not create a private right of action for the enforcement of the statutory terms or regulations under them at issue in this case." (Def.'s Mot., Dkt. No. 22, p. 31.) Additionally, Defendant argues that the claim for declaratory judgment "is entirely duplicative of the relief requested for Plaintiffs' breach of contract, fraud, and bad faith claims. . . [and] seeks an adjudication on the merits of separately pleaded causes of action and thus [serves] no useful purpose." (Def.'s Mot., Dkt. No. 22, p. 32.) This Court finds that the Declaratory Judgment Act does not create a private right to relief and Plaintiffs have failed to state a claim for relief plausible on its face. Defendant's Motion to Dismiss regarding Plaintiffs' declaratory judgment claim is granted.

## CONCLUSION

For the reasons stated above, Defendant Health Care Service Corporation's Motion to Dismiss (Dkt. No. 22) is DENIED in part and GRANTED in part.

IT IS SO ORDERED this 25th day of September, 2018.

_____
ROBIN J. CAUTHRON
United States District Judge