IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTINA and JEFFREY TERRY, husband and wife, each individually and on behalf of their minor child, G. TERRY, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION, a mutual legal reserve company, d/b/a BLUE CROSS AND BLUE SHIELD OF OKLAHOMA,<br><br>Defendant. | Case No. CIV-18-0415-C |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Defendant's First Motion for Protective Order (Dkt. No. 39); (2) Defendant's Motion to Compel (Dkt. No. 50); (3) Defendant's Motion to Stay Proceedings (Dkt. No. 57); (4) Defendant's Motion to Deem Admitted Its First Set of Requests for Admission ("RFAs") (Dkt. No. 58); (5) Defendant's Second Motion for Protective Order (Dkt. No. 60); (6) Plaintiffs' Motion for Leave to File a Supplemental Response Brief (Dkt. No. 66); (7) Plaintiffs' Application Under F.R.C.P. 56(d) for Additional Time to Respond to Defendant's Motion for Summary Judgment (Dkt. No. 73); and (8) Plaintiffs' Motion to Compel (Dkt. No. 75). All matters are fully briefed and now at issue.

## I.  Background

The basic facts of this case have been recalled many times, and need not be belabored here.  In short, on January 15, 2014, Plaintiffs had to have their newborn child medevacked to the Children's Hospital at OU Medical Center.  (Dkt. No. 1, p. 3.)  The bill for this flight was approximately $50,000, and Defendant—Plaintiffs' insurance provider—eventually determined it was only responsible for just under $5,000 of this, leaving Plaintiffs responsible for the remaining $45,000.  (Id. at 4-5.)  As a result, Plaintiffs believe Defendant not only breached the insurance contract, but also engaged in bad faith and fraudulent conduct as well.

Upon the Court's partial denial of Defendant's Motion to Dismiss, the parties have been engaged in discovery.  Up until now, the parties have conducted discovery only on the merits of Plaintiffs' individual claims, even though Plaintiffs assert class allegations against Defendant as well.  The Court has limited discovery to these issues thus far to sort out whether Plaintiffs may even maintain an individual claim against Defendant before assessing any class allegations.  At the close of the period reserved for merits discovery, Defendant simultaneously moved for summary judgment and to stay discovery in the case during the pendency of summary judgment. (Dkt. Nos. 56 & 57.)  Defendant's stay request was originally granted, but later lifted by the Court.[1]  (Dkt. Nos. 51 & 69.)  Notably, both parties have discovery motions pending before the Court.  Most significant, however, is

---

[1] This only applies to the discovery regarding the merits of Plaintiffs' individual claims. When the Court originally granted the stay, it also stayed class discovery, and that stay remains in place.

Plaintiffs' motion for more time to conduct additional discovery to respond to Defendant's summary judgment motion.

## II. Discussion

### a. Plaintiffs' Motion for Extension of Time (Dkt. No. 73)

Plaintiffs contend that they need time to conduct additional discovery in order to respond to Defendant's summary judgment motion. In support, they provide a lengthy list of matters that they purportedly need to further explore before addressing Defendant's motion. (See Dkt. No. 73, pp. 8-12.) Moreover, they allege that they have unsuccessfully attempted to obtain this information from Defendant. (Id. at 12-14.) Defendant alleges, however, that Plaintiffs have all they need to respond to its motion, and that they have not made the requisite showing for their motion.

Under Federal Rule of Civil Procedure 56(d), when a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment]," a district court may, in its discretion, (1) defer considering a motion for summary judgment or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d); see Jensen v. Redevelopment Agency, 998 F.2d 1550, 1553-54 (10th Cir. 1993). "The general principle of Rule 56(f) [now 56(d)] is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." Price ex rel. Price v. W. Resources, Inc., 232 F.3d 779, 783 (10th Cir. 2000) (internal quotation marks and citation omitted).

"Unless dilatory or lacking in merit," a party's 56([d]) application "should be liberally treated." Jensen, 998 F.2d at 1553-54 (internal quotation marks and citations omitted).

The Court finds that Plaintiffs have adequately shown that they need discovery on a range of fronts to respond to Defendant's motion. The Court thus finds that they have met their burden under Fed. R. Civ. P. 56(d), and that their motion for an extension should be granted. Plaintiffs will receive an additional 90 days to conduct discovery pertaining to Defendant's summary judgment motion.

**b. Defendant's Motion to Stay Proceedings (Dkt. No. 57)**

The Court will now revisit Defendant's request to stay merits discovery pending the resolution of its summary judgment motion.

District courts retain the "discretion to issue a stay pending the outcome of a dispositive motion." CEP Mid-Continent, LLC v. Turkey Creek, LLC, No. 09-CV-350-CVE-FHM, 2010 WL 455128, at 1 (N.D. Okla. Feb. 2, 2010); see also Coastal States Gas Corp. v. Dep't of Energy, 84 F.R.D. 278, 282 (D. Del. 1979) ("It is within the sound discretion of the Court to postpone discovery of issues relating to the merits of a case pending resolution of potentially dispositive motions.").

The Court finds that a stay of discovery is inappropriate here. Notably, there are a number of discovery motions pending before the Court. These have been initiated by both parties, and should be resolved. Moreover, the Court finds that merits discovery needs to take place—even if not directly relevant to Defendant's pending summary judgment motion. In line with the Court's finding above, however, Defendant may move for a stay

4

at the close of the 90-day window. Nevertheless, the Court will permit discovery regarding the merits of Plaintiffs' claims to move forward during this time.[2]

   c. **Defendant's First Motion for Protective Order (Dkt. No. 39)**

Defendant alleges that the items listed in Plaintiffs' subpoena are beyond the scope of permissible discovery (by seeking class discovery) and not relevant. Plaintiffs, however, maintain that these items are relevant—particularly to their bad faith claim—and permissible.

Courts generally use a broad definition of relevance when determining whether discovery is permissible, because discovery "is designed to help define and clarify the issues." Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1519 (10th Cir. 1995) (internal quotation marks and citation omitted). Yet Rule 26 does not authorize unlimited discovery. See Murphy v. Deloitte & Touche Grp. Ins. Plan, 619 F.3d 1151, 1163 (10th Cir. 2010). Moreover, the mere fact that a plaintiff offers a "'broad theory of the case'" does not automatically justify equally broad discovery, "unless the discovery is relevant to the plaintiff's actual claims or defenses." In re Cooper Tire & Rubber Co., 568 F.3d 1180, 1193 (10th Cir. 2009). In other words, discovery requests must generally be proportionate to the needs of the case. See Fed. R. Civ. P. 26(b)(1). Additionally, district courts retain the discretion to place limits on discovery beyond the federal rules. Id. ("[u]nless otherwise limited by court order, the scope of discovery is as follows: . . .").

---

[2] Class discovery, however shall remain stayed during this time.

The Court finds that most of the subpoena is relevant and does not target class discovery—it seeks discovery pertaining to Plaintiffs' bad faith claim. (See Dkt. No. 36, p. 8.) The exception to this finding is item (3) in the subpoena, seeking the production of "[a]ny correspondence sent by RMH to BCBSOK on behalf of a BCBSOK insured concerning an appeal, including but not limited to emails, documents, letters." (Id.) The Court finds that only this item is beyond the limited scope of discovery permitted at this time. Accordingly, Defendant's First Motion for Protective Order should be granted in part and denied in part.

### d. Defendant's Second Motion for Protective Order (Dkt. No. 60)

Defendant objects to Plaintiffs' Notice to Take Deposition (Dkt. No. 53) as inconsistent with their prior agreements. Defendant further urges the Court to defer this matter until the conclusion of the summary judgment motion. Plaintiffs maintain, however, that Defendant misrepresents their agreement and has not presented good cause for a protective order. Indeed, "[i]t is the party seeking the protective order who has the burden to show good cause for a protective order." Velasquez v. Frontier Med. Inc., 229 F.R.D. 197, 200 (D.N.M. 2005).

The Court finds that Defendant has failed to present good cause for a protective order. At most, the correspondence between the parties shows that there was likely some miscommunication and a failure to agree regarding what topics were appropriate for Defendant's corporate representative testimony (see Dkt. Nos. 76-2 & 60-1), but this is improper grounds to shield Defendant from producing a corporate representative at all. If Defendant takes issue with any particular deposition topics, it should lodge those objections

specifically. Moreover, in light of the Court's denial of Defendant's stay request, there is no need to defer this matter during the pendency of Defendant's summary judgment motion. Accordingly, the Court finds that Defendant's Second Motion for Protective Order should be denied.

### e. Motion to Deem Admitted Its First Set of RFAs (Dkt. No. 58)

Before addressing the merits of this motion, the Court notes that Plaintiffs have moved for leave to submit their sur-reply to the Court. (Dkt. No. 66.) The Court finds that Plaintiffs' motion should be granted, and will consider the sur-reply's arguments here.

Where a party fails to respond to RFAs within the 30-day window, those RFAs are deemed admitted. See Fed. R. Civ. P. 36(a)(3); see also Reynolds v. Delmar Gardens of Lenexa, Inc., Civil Action No. 02-2039-KHV, 2003 WL 192481, *3 (D. Kan. Jan.2, 2003) (pursuant to Fed. R. Civ. P. 36, a party is deemed to have admitted each request for admission by failing to respond within 30 days); Kan. Nat'l Bank & Trust Co. v. Allmon, Civ. A. No. 88-2294-O, 1990 WL 182350, *1 (D. Kan., Oct.29, 1990) (same).

This motion surrounds the Plaintiffs' admitted failure to timely respond to Defendant's first set of RFAs. Plaintiffs maintain, however, that Defendant improperly served these RFAs, failed to meet and confer before filing this motion, and filed more RFAs than permissible by law. (See generally Dkt. No. 61.) The strongest of these arguments is the allegedly improper service of these RFAs. Under the Federal Rules, parties may serve documents on each other electronically—as long as the party being served has consented to electronic service in writing. Fed. R. Civ. P. 5(b)(2)(E). "The

consent must be express, and cannot be implied from conduct." Fed. R. Civ. P. 5, Committee Notes on Rules—2001 Amendment.

Defendant maintains that Plaintiffs consented to electronic service back in November of 2018, when they sent Defendant their Rule 26 disclosures via email and wrote "[w]e are only sending via email." (Dkt. No. 64, p. 4.) This is the only written statement Defendant relies on in asserting that Plaintiffs consented to electronic service. Defendant further points out that Plaintiffs continued to exchange discovery electronically without complaint. As noted above, however, consent may not be implied from conduct. Moreover, Plaintiffs' statement is not consent to be served electronically—it is, at best, a warning that they are only *sending* discovery electronically.[3] Accordingly, the Court finds that Plaintiffs were improperly served with the RFAs, and that they will not be deemed admitted.

### f. Defendant's Motion to Compel (Dkt. No. 50)

In its motion to compel, Defendant largely focuses on the adequacy of Plaintiffs' responses. Essentially, Defendant alleges that Plaintiffs' responses are inadequate, while Plaintiffs maintain that their responses are sufficient.

In a federal civil proceeding, parties may only obtain discovery regarding a non-privileged matter that is relevant to a claim or defense involved in the pending litigation. Fed. R. Civ. P. 26(b)(1). Therefore, relevant information need not be admissible

---

[3] Though it is unclear, it is possible that Plaintiffs were only referring to the disclosures at issue in that email, rather than making some general statement about all of discovery moving forward.

8

at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. See id.

Ultimately, "[t]he district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing their oppressiveness, and weighing these factors in deciding whether discovery should be compelled." Yancey v. Hooten, 180 F.R.D. 203, 207 (D. Conn. 1998) (citations and internal quotation marks omitted).

   1. Interrogatory No. 1

With this interrogatory Defendant demands Plaintiffs identify any "Person who has or may have knowledge or information relating to the allegations in the Complaint." (Dkt. No. 50-1, p. 1.) Plaintiffs objected to this interrogatory as overbroad, yet still responded by pointing out that they have previously provided a list of "Individuals with information Claimants may use to support their claims." (Dkt. No. 55, p. 5.) While the categories are similar, the Court finds that they are not identical; Plaintiffs must respond to Defendant's interrogatory more directly by specifically identifying which individuals fit within the interrogatory's description—even if the identities were previously disclosed under Rule 26. Moreover, the Court finds that this interrogatory is not unduly burdensome.

   2. Interrogatory No. 3

This interrogatory asks Plaintiffs to identify all communications between them and RMH "regarding RMH's Billed Charges or the Claim . . . ." (Dkt. No. 50-1, p. 3.) Plaintiffs believe they adequately responded to this by referring generally to their Rule 26 disclosures, while Defendant maintains that this is insufficient. The Court finds, again,

9

that Plaintiffs must be more specific and directly identify any communications with RMH. If the communications may be found within the Rule 26 disclosures, Plaintiffs must specifically identify them—not just generally refer to the document.

   3. Interrogatory No. 7

Here, Defendant requests the identification of any misrepresentations Defendant purportedly made to Plaintiffs. (Dkt. No. 50-1, p. 9.) In response, Plaintiffs identify a phone call where Jeffrey Terry spoke with one of Defendant's representatives "on the date of and before the transport" who told Terry that Defendant would cover their air ambulance claim. (Dkt. No. 50-3, p. 11-12.) Defendant essentially takes issue with Plaintiffs' failure to identify the representative. Plaintiffs maintain, however, that they do not possess any more information about the call, and that Terry does not remember the representative's name—particularly given that the call was over four years ago. (Dkt. No. 55, p. 7.) Indeed, the Court cannot compel Plaintiffs to produce information that does not exist or that is not in Plaintiffs possession, custody, or control. See Fed. R. Civ. P. 34(a); see also Pulsecard, Inc. v. Discover Card Servs., Inc., 168 F.R.D. 295, 307 (D. Kan. 1996). The Court finds that Defendant is not entitled to information that Plaintiffs cannot obtain, and that Plaintiffs have sufficiently answered this interrogatory.

   4. Interrogatory No. 13

In this interrogatory, Defendant asks Plaintiffs to describe what they did to appeal the wrongful denial of their claim. In response, Plaintiffs referred to their response to Interrogatory No. 4. (Dkt. No. 50-3, p. 14.) Plaintiffs' response to Interrogatory No. 4

clearly includes information relevant to Interrogatory No. 13.[4]  Nonetheless, the Court finds that Plaintiffs must directly respond to Defendant's interrogatory—even if it involves largely cumulative information.

     5.   Request for Production No. 21

This Request for Production ("RFP") seeks the production of:

> All Documents and Communications from any Health Care Provider, including but not limited to a physician, psychiatrist, psychologist, counselor, or other mental health provider related to any treatment [Plaintiffs] have ever sought in connection with depression (including postpartum depression) or any other emotional or psychological issue.

(Dkt. No. 50-3, p. 19.)

Plaintiffs object to this request as overbroad and disproportionate to the needs of the case.  (Dkt. No. 55, p. 9.)  Defendant maintains that the information is relevant to the issue of Plaintiffs' damages because Plaintiffs allege that they have suffered mental anguish.  The Court finds that, in part, both parties are correct:  Plaintiffs' mental health is at issue, but only to a certain extent.  The Court finds that Plaintiffs must respond to Defendant's RFP, but only with information that has accumulated since the date of the accident—January 15, 2014.  Moreover, Defendant's request is further limited to information in connection with this case.

---

    [4] Interrogatory No. 4 sought the identification of all communications Plaintiffs had with the Oklahoma Department of Insurance relating to their claim between January 13, 2014, and April 27, 2018.  (Dkt. No. 50-3, p. 3.)

6. Request for Production No. 22

Defendant here requests the production of all of Plaintiffs' social media postings from January 13, 2014, to present. (Dkt. No. 50-3, p. 19.) Plaintiffs object to this as overbroad and unduly burdensome. (Dkt. No. 55, p. 10.) Defendant, however, contends that these records are relevant to Plaintiffs' purported damages of mental anguish. (Dkt. No. 50, p. 15.) The Court finds that this information is relevant, but only to the extent any posts relate to Plaintiffs' claims or alleged damages. As a result, Plaintiffs must produce all social media posts related to their claims or alleged damages from January 13, 2014, to present.

In sum, Defendant's Motion to Compel (Dkt. No. 50) will be granted in part and denied in part.

**g. Plaintiffs' Motion to Compel (Dkt. No. 75)**

Plaintiffs' Motion to Compel focuses on Defendant's purported lack of document production in response to Plaintiffs' RFPs. Defendant, however maintains that its responses are adequate.

1. Request for Production No. 1

This RFP requests that Defendant produce "[a]ny statement, whether printed, written, or electronically recorded, by any person concerning the subject matter of this proceeding." (Dkt. No. 75-1, p. 4.) Defendant objects to this request as vague— contending that the terms "statement" and "subject matter of this proceeding" remain undefined. (Id.) Defendant further contends that it has produced sufficient documentation by responding to Plaintiffs' RFP No. 3, which requests all documents regarding Plaintiffs'

insurance claim and Defendant's actions in adjusting and paying the claim. (Dkt. No. 79, pp. 6-7.) The Court finds, however, that the RFP is not vague. First, "statement" is defined within the RFP—"whether printed, written or electronically recorded"—and the subject matter of this proceeding directly refers to the events underlying this litigation. Moreover, Defendant must respond directly to Plaintiffs' RFP. To the extent that documentation is cumulative, Defendant must, at a minimum, specify which particular documents respond to Plaintiffs' request.[5]

      2. Request for Production No. 8

In this RFP, Plaintiffs request all documents regarding Plaintiffs, "or the incidents alleged in Plaintiffs' Complaint produced or provided to you by any person or entity." (Dkt. No. 75-1, p. 7.) Defendant first objects that this is overbroad, but also maintains that it has produced all relevant documentation. (Dkt. No. 79, pp. 7-8.) Plaintiffs, however, offer to limit this request to documents concerning the air ambulance claim issue. (See Dkt. No. 82, p. 4.) The Court finds that, with Plaintiff's limitation, this RFP is not overbroad. The Court further finds that, to the extent it has not yet done so, Defendant must produce all relevant documentation in response to this RFP.

      3. Request for Production No. 9

This RFP requests from Defendant "[a]ll documents concerning your refusal of or dispute as to the amount of coverage of any claim of Plaintiffs." (Dkt. No. 75-1, p. 8.)

---

[5] Defendant also claims it has not located any electronic recordings in response to this RFP. (Dkt. No. 79, p. 7.) As noted above, the Court cannot compel a party to produce evidence it does not possess. Therefore, the Court reminds Defendant that it must—in good faith—continue to search for any electronic recording in response to this RFP.

Defendant contends that this request is cumulative and extends beyond the issues currently pending before the Court on summary judgment. (Dkt. No. 79, pp. 8-9.) Nevertheless, the Court finds that because Defendant's request for a stay on merits discovery will be denied, this RFP need not be directly relevant to the summary judgment motion. The Court further finds that Defendant's argument that the request is cumulative does not absolve it from providing any information to Plaintiffs. Defendant must at least specify which specific previously produced documents directly address this RFP, and further disclose any previously unproduced additional documents that are relevant to this inquiry.

    4.  Request for Production No. 11

In this RFP, Plaintiffs seek a copy of Defendant's "procedure or policy relating to the recording of telephone conversations with respect to processing insured's claims." (Dkt. No. 75-1, p. 9.) Defendant has produced the procedure for 2014—the year Plaintiffs' claim was handled. (Dkt. No. 75, p. 15.) Plaintiffs maintain that this is insufficient because some calls may have taken place later than 2014, and that the policy could have changed since then. (Id.) The Court finds that Plaintiffs only requested a procedure, not procedures. Plaintiffs further failed to specify any particular dates within their RFP. Accordingly, the Court finds that Defendant has sufficiently complied with this RFP.[6]

---

[6] Plaintiffs also mention that "Defendant does not even seem to have produced the promised policy from 2014." (Dkt. No. 75, p. 16.) The Court is unsure what to make of this statement, but Defendant must produce the policy for recording phone calls for 2014, or whichever policy applied to the phone calls Plaintiffs made to Defendant.

14

5. Requests for Production Nos. 13, 16

Plaintiffs here seek the disclosure of (1) all documents pertaining to Rocky Mountain Holdings ("RMH") becoming an "in-network provider" and (2) "all contracts or agreements for services" between Defendant and RMH, as well as any other air ambulance providers from January 1, 2014, to present. (Dkt. No. 75-1, pp. 9, 11.) Defendant asserts that these RFPs request irrelevant information because RMH became an "in-network provider" long after Plaintiffs' incident. (Dkt. No. 79, p. 10.) The Court, however, finds that the information requested within these RFPs is relevant, with one limitation. The Court finds that Plaintiffs' RFP No. 16 should be limited to the contracts and agreements between Defendant and RMH—information involving other air ambulance providers should be excluded.

6. Request for Production No. 17

RFP No. 17 requests that Defendant produce "all documents concerning the Oklahoma Insurance Department – Market Conduct Examination Report for period January 1, 2013–May 23, 2016, pertaining to [Defendant]." (Dkt. No. 75-1, p. 11.) Defendant largely maintains that the report is not relevant to this litigation at all. (See Dkt. No. 79, p. 11.) But the Court has previously rejected this argument. (See Dkt. No. 52, p. 7.) The Court finds that the report is relevant and must be disclosed.[7]

---

[7] To address Defendant's concern about the disclosure of confidential information (Dkt. No. 79, p. 11), the parties are encouraged to confer about the possibility of an agreed protective order for the report.

7. Requests for Production Nos. 18, 19

With these RFPs, Plaintiffs request the disclosure of all documents regarding how Defendant calculated, in 2014, the allowable charge for both in-network and out-of-network air ambulance services. (Dkt. No. 75-1, p. 11-12.) Defendant maintains that these RFPs request irrelevant information—particularly given that allowable charge determinations vary from contract to contract. (Dkt. No. 79, p. 12.) The Court, however, finds that these RFPs request relevant information. Nonetheless, the Court limits these requests to documents pertaining to RMH, the air ambulance provider in this case.

8. Request for Production No. 21

Finally, Plaintiffs here seek to obtain all documentation regarding Defendant's claim handling procedures. (Dkt. No. 75-1, p. 13.) Defendant objects, contending that this request is overbroad and encompasses the handling of claims completely unrelated to Plaintiffs' claim. (Dkt. No. 79, p. 13.) The Court finds that Defendant must comply with Plaintiffs' RFP. But the Court will limit the request to documentation pertaining to claims handling procedures: (1) that are general in nature and thus apply to all claims, and (2) that are specific to the handling of air ambulance claims.

In sum, Plaintiffs' Motion to Compel will be granted in part and denied in part.[8]

## CONCLUSION

For these reasons, (1) Defendant's First Motion for a Protective Order (Dkt. No. 39) is GRANTED in part and DENIED in part; (2) Defendant's Motion to Compel (Dkt. No.

---

[8] Because both parties won and lost parts of their discovery motions, the Court finds that no award of attorneys' fees under Fed. R. Civ. P. 37 is appropriate.

50) is GRANTED in part and DENIED in part; (3) Defendant's Motion to Stay Case Proceedings (Dkt. No. 57) is DENIED; (4) Defendant's Motion to Deem Admitted its First Set of Requests for Admissions (Dkt. No. 58) is DENIED; (5) Defendant's Second Motion for a Protective Order (Dkt. No. 60) is DENIED; (6) Plaintiffs' Motion for Leave to File a Supplemental Response Brief [Sur-Reply] (Dkt. No. 66) is GRANTED; (7) Plaintiffs' Application Under F.R.C.P. 56(d) for Additional Time to Respond to Defendant's Motion for Summary Judgment (Dkt. No. 73) is GRANTED; and (8) Plaintiffs' Motion to Compel (Dkt. No. 75) is GRANTED in part and DENIED in part. Plaintiffs are granted an additional 90 days from the date of this Order to conduct discovery, and must respond to Defendant's summary judgment motion by Monday, July 22, 2019.

    IT IS SO ORDERED this 23rd day of April, 2019.

*[signature]*
ROBIN J. CAUTHRON
United States District Judge