# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CHRISTINA TERRY, individually and on behalf of her minor child, G.T. and on behalf of all others similarly situated,** ) ) ) ) **Plaintiffs,** ) ) **v.** ) ) **HEALTH CARE SERVICE CORPORATION, a mutual legal reserve Company, d/b/a BLUE CROSS AND BLUE SHIELD OF OKLAHOMA, BCBSOK,** ) ) ) ) ) ) ) **Defendant.** ) | Case No. CIV-18-415-PRW |

## **ORDER**

In January 2014, Christina Terry gave birth to a son, G. Terry, in Elk City, Oklahoma. There were complications, and the child's survival was in doubt. The doctor in the small, local hospital told Terry that her son needed to be transported to a more capable facility in Oklahoma City but might not survive the long ambulance ride. The doctor thus recommended a helicopter transfer. The child was transferred via helicopter on January 14, 2014, and ultimately survived.

Terry's health insurance provider was Defendant Health Care Service Corporation, doing business as Blue Cross and Blue Shield of Oklahoma ("Blue Cross/Blue Shield").

1

The air ambulance service, Rocky Mountain Holdings, was not a participating provider in Blue Cross/Blue Shield's network for air ambulance services in Oklahoma.

The air ambulance service invoiced $49,999.00 for the transfer, but Blue Cross/Blue Shield paid only $2,909.92, denying payment for the remaining $45,149.14. Terry, individually and on behalf of the minor child, G.T., filed suit on April 27, 2018, claiming entitlement to full reimbursement of the invoiced amount.

The dispute in this case revolves around the denial of coverage, specifically, whether Terry's policy obligated Blue Cross/Blue Shield to fully pay the claim. Blue Cross/Blue Shield answers no, and also argues that the lawsuit is untimely because the statute of limitations requires that bad faith and fraud claims be brought within two years, while the insurance contract contains a provision requiring that breach of contract claims be brought within three years and ninety days of the expiration of the relevant "Benefit Period."

Some of the facts surrounding how the claim was processed, how Terry was informed of the denial, and whether Terry appealed the denial, are in dispute. But Blue Cross/Blue Shield argues that one key material fact has not been adequately disputed by Plaintiffs. Blue Cross/Blue Shield alleges that by no later than February 2016, Terry knew that Blue Cross/Blue Shield would not be making any more reimbursements on Terry's claim, and would accordingly not be fully reimbursing the claim, as Plaintiffs claim they must. In other words, according to Blue Cross/Blue Shield, by no later than February 2016 Terry's cause of action had accrued.

Plaintiffs attempt to dispute this fact, but their response misses the mark. Here is that response in full:

> Plaintiff did not consider suit against Defendant in 2014 when appealing through the Oklahoma Insurance Department. Further, even when Plaintiff contacted counsel on November 22, 2015, she did so to dispute the charges assessed by Rocky Mountain Holdings, not to challenge Defendant's payments. It was not until she learned of Defendant's actions in the *Martin* case that she decided to sue Defendant. The *Martin* result did not become public until August 2017, and that is the earliest date that Plaintiff knew of her claims presented in this action.[1]

Nothing about this response allegation disputes Defendant's allegation that, at least as of February 2016, Terry was on notice that Blue Cross/Blue Shield wasn't going to make any additional reimbursements on the claim.

Plaintiffs' first response, that Terry wasn't considering suing in December 2014, misses the point entirely. Whether Terry was contemplating suing is irrelevant to whether her cause of action had accrued. While not well articulated, Plaintiffs' argument appears to be that a consumer complaint submitted to the Oklahoma Insurance Department by Terry's then-husband constitutes an "appeal" of Blue Cross/Blue Shield's denial of the claim, which means that the denial was not final until that "appeal" was decided. But as Blue Cross/Blue Shield correctly points out, a consumer complaint to a third party is not an appeal of the denial of policy benefits pursuant to any policy provision, and thus changes nothing with respect to the finality of its denial of the claim.

The same goes for Plaintiffs' second response, that on November 22, 2015, when Terry lawyered up, she wasn't considering suing Blue Cross/Blue Shield, but rather suing

---

[1] Plaintiffs' Resp. to Mot. for Summ. J. (Dkt. 122), at 18 (cleaned up).

Rocky Mountain Holdings. Again, that Terry's ire was at that point directed at the provider of the air ambulance rather than her insurance provider has no bearing on whether her cause of action against her insurance company had accrued.

Plaintiffs' third response, that they didn't decide to sue Blue Cross/Blue Shield until Terry (her lawyers, presumably) heard about a settlement that Blue Cross/Blue Shield had reached in another case, likewise misunderstands the law with respect to accrual of a claim. First, Blue Cross/Blue Shield says the *Martin* case is irrelevant because it involves a different insurance policy and different facts. But even assuming that the case is on all fours with this case, the fact that the *Martin* plaintiffs had the wherewithal to sue demonstrates that there was no barrier to Plaintiffs here doing the same. Plaintiffs certainly didn't have to wait and see the *outcome* of the *Martin* case before their cause of action accrued. The accrual of Plaintiffs' cause of action does not turn on whether some other plaintiffs in another case, involving a different insurance policy, were able to successfully negotiate a settlement with the Defendant.[2] Accordingly, it remains undisputed that Blue Cross/Blue Shield had denied Plaintiffs' claim and that Terry was on notice, no later than February 2016, of that fact.

---

[2] *See Waldon v. Davis*, 2015 WL 5006151 at *5 (D. Kan. Aug. 20, 2015) (rejecting a similar statute-of-limitations argument where "[t]he 'fact' plaintiffs claim they did not know was the [outcome of another case]. That ruling, however, was not a material fact essential to plaintiffs' cause of action in this matter. Rather, it was a legal holding in a case with similar facts"), *aff'd sub nom. Wille v. Davis*, 650 F. App'x 627, 630 (10th Cir. 2016) (rejecting plaintiffs' argument that "they could not have discovered either their injury or that their injury was the result of Davis' malpractice until" after the other case concluded, because the outcome of a separate case "is not a material fact" relevant to tolling a statute of limitations).

That fact being undisputed, Plaintiffs' cause of action accrued no later than February 2016. Because the statute of limitations on the fraud and bad faith claims is two years, those claims are untimely. Plaintiffs make some unavailing arguments about later discovered facts, but it is obvious that Plaintiffs believed they had ripe causes of action when they filed this lawsuit, and they have never claimed otherwise. That they later discovered facts that might be helpful to their suit doesn't change the fact that their cause of action had accrued long before.

The breach of contract claim is more complicated because it involves a contractual limitations period. Such agreed limitations periods are generally enforceable, but Plaintiffs argue that this particular limitations provision should be an exception to that general rule because, in their view, the provision is obscure and difficult to understand. None of Plaintiffs' arguments in this regard, however, are persuasive.

First, Plaintiffs argue that the provision is difficult to find in the text of the policy, and point to the fact that at deposition, Blue Cross/Blue Shield's representative wasn't able to immediately say where the provision was located in the policy. But whether the representative was prepared to immediately locate the provision says little—if anything—about whether the provision is obscure. Unlike the provision in the case primarily relied on by Plaintiffs, *Blue v. Universal Underwriters Life Insurance Co.*,[3] the provision here is in the body of the policy, in normal-sized font, and is labeled in bolded and capitalized letters

---

[3] 612 F. Supp. 2d 1201, 1204 (N.D. Okla. 2009).

as a "**LIMITATIONS OF ACTIONS**."[4] A provision that is in the policy itself, not hidden, and clearly labeled, is hardly obscure.[5]

Plaintiffs next argue that the limitations provision is ambiguous and confusing because it contains defined terms that must be cross-referenced in other parts of the policy. In support of this, they claim that the date relied on by Blue Cross/Blue Shield in calculating the relevant start of the limitations period has changed from October 31, 2014, to January 1, 2015. But the limitations provision plainly and unambiguously states that no legal action may be taken "later than three years after expiration of the time within which a Properly Filed Claim is required by this Contract."[6] Another provision in the policy then explains when a "Properly Filed Claim" is required.[7] There is nothing inherently ambiguous about any of this. As to Plaintiffs' claim that Blue Cross/Blue Shield's has created a moving target with respect to the triggering date, Blue Cross/Blue Shield responds—quite reasonably—that in its motion it gave Plaintiffs the benefit of the date when it relied on January 1, 2015, as the relevant date, but that it would be perfectly justified in using October 31, 2014, (as its designated representative did at deposition) because Plaintiffs stopped paying their premiums after October 2014. Thus, says, Blue

---

[4] BlueCross BlueShield of Oklahoma: Individual PPO Contract (Dkt. 122, Ex. 1), at 52.

[5] *See Zewdie v. Safeco Insurance Co. of Am.*, 304 F. Supp. 3d 1101, 1108 (W.D. Okla. 2018) (noting that where policy language "is set out in bold print in a separately numbered paragraph . . . . Not only is the language used simple and clear, but courts have repeatedly concluded similar clauses are unambiguous and enforceable"); *see also Hayes v. State Farm Fire & Cas. Co.*, 855 F. Supp. 2d 1291, 1300 (W.D. Okla. 2012).

[6] BlueCross BlueShield of Oklahoma: Individual PPO Contract (Dkt. 122, Ex. 1), at 52.

[7] *Id.* at 50.

Cross/Blue Shield, that shifting date has nothing to do with the limitations provision being hard to understand, but rather is merely evidence that Plaintiffs' lawsuit is late even if Plaintiffs are given the benefit of every doubt.

Having agreed to the contractual limitation period, Plaintiffs are bound by its terms. Construing that provision as generously as possible, Plaintiffs were required to bring suit no later than March 31, 2018. Because they didn't file suit until April 27, 2018, their breach of contract claim is untimely.

Having determined that Plaintiffs' claims are untimely and must be dismissed, the Court expresses no opinion on the merits of Plaintiffs' claims. The motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED** this 28th day of September 2021.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE